# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00206-CV

**Bobby Hawthorne, Appellant**

**v.**

**Countrywide Home Loans, Inc. and Countrywide Insurance Services of Texas, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN102439, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

### O P I N I O N

This case concerns the scope of disclosure authority a borrower may give to a lender under article 21.48A of the insurance code. *See* Tex. Ins. Code Ann. art. 21.48A, §§ 1(1), 2(c) (West Supp. 2004). Appellant Bobby Hawthorne granted authority to his original mortgage company to "to furnish information contained in [his] policy of insurance to any person . . . [the Lender] deems advisable for the purpose of quoting rates and complying with the covenants of the Deed of Trust." When Countrywide Home Loans, Inc. (Countrywide Home Loans), a purchaser of the mortgage on his house, allegedly shared his insurance information with its subsidiary insurance company, Hawthorne brought this suit in district court. He argued that he granted that authority only to the lender named within the document in which the grant was made and that authority could not extend

to Countrywide Home Loans. The district court granted summary judgment in favor of Countrywide Home Loans, which Hawthorne appeals. We affirm the judgment of the district court.

**BACKGROUND**

Hawthorne and his wife, Mary Keller, purchased their home in Austin in 1991.[1] Two years later, on April 13, 1993, Hawthorne and Keller refinanced their mortgage loan through Mission Mortgage of Texas, Inc. (Mission Mortgage). Mission Mortgage is identified as their lender in the note, the Deed of Trust, and other documents relating to the loan. As part of the closing on the refinanced loan, Hawthorne and Keller signed a "Mortgagor's Affidavit," which defined "Lender" as Mission Mortgage and in which they granted

> specific authority to Lender to furnish information contained in our policy of insurance to any person we designate in writing or they deem advisable for the purpose of quoting rates and complying with the covenants of the Deed of Trust.

Countrywide Home Loans is not mentioned in the Mortgagor's Affidavit or in any other of the closing documents.

Around the time of closing, Mission Mortgage transferred the servicing rights to the loan to Countrywide Home Loans.[2] At the time of closing, Hawthorne and Keller signed a "Notice of Assignment, Sale, or Transfer of Servicing Rights," in which they recognized that Countrywide

---

[1] Hawthorne brought this suit in his name only. For purposes of clarity, we will note in this section when Hawthorne and Keller acted together. However, in discussing the legal claims, we will refer only to Hawthorne.

[2] The record does not indicate exactly when Mission Mortgage transferred the servicing rights to Countrywide.

Home Loans would be the new servicer of the loan.[3] In addition, at that time Hawthorne and Keller received a letter indicating that they should forward all loan payments to Countrywide Home Loans.

In August 1999 and again in June 2001, Countrywide Insurance Services of Texas, Inc. (Countrywide Insurance), sent homeowners' insurance solicitation letters to Keller. These letters referenced the loan number of the mortgage of Keller and Hawthorne. They also provided quotes on homeowners' insurance based on coverages similar to the ones in force with their then-current carrier.

Hawthorne then filed suit,[4] alleging violations of article 21.48A, which provides in pertinent part:

> No Lender shall use or permit the use of any of the information taken from a policy of insurance insuring the property of a Borrower for the purpose of soliciting insurance business from the Borrower, or make any such information available to any other person for any purpose, unless such Lender has first been furnished specific written authority from the Borrower permitting or directing such particular use or disclosure . . . .

Tex. Ins. Code Ann. art. 21.48A, § 2(c). Hawthorne produced some evidence in discovery that Countrywide Home Loans might have shared with Countrywide Insurance information it had about Hawthorne's insurance coverage. However, in deposition testimony, Hawthorne admitted that he knew at the time of closing that Countrywide Home Loans would be the lender on his loan.

---

[3] This document is undated but states a beginning date of June 1, 1993, for receipt of loan payments.

[4] This case, as originally filed, included another named plaintiff, Eric Campbell. Campbell's case has been severed from this one.

3

Countrywide Home Loans filed a motion for summary judgment. *See* Tex. R. Civ. P. 166a. In its motion, Countrywide Home Loans claimed that Keller and Hawthorne's Mortgagor's Affidavit granted specific permission to "the Lender" to share insurance information and that Hawthorne knew at the time of closing that Countrywide Home Loans had bought the loan and was the lender. The district court granted Countrywide Home Loans' motion. This appeal followed.

**DISCUSSION**

Hawthorne appeals the district court's grant of summary judgment in two issues—that he did not grant authority to Countrywide Home Loans to share his insurance information and, in the alternative, that Countrywide Home Loans' actions exceeded the scope of authority Hawthorne granted. We disagree.

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). The standards for reviewing traditional summary judgments are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972). The summary judgment is affirmable on appeal if any ground asserted in the motion

4

for summary judgment is a valid ground for rendering summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). Thus, a party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 233 (Tex. 1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

Contract construction is also a matter of law. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). A court's primary concern is to ascertain and give effect to the parties' intentions as expressed in the instrument. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). In arriving at the intent of the parties, the situation of the parties at the time of entering into the contract is to be taken into consideration. *See Fleming Oil Co. v. Anco Gas Corp.*, 217 S.W.2d 29, 35 (Tex. Civ. App.—El Paso 1948, writ ref'd n.r.e.).

In support of its motion for summary judgment, Countrywide Home Loans offered Hawthorne's deposition testimony:

> Q: And [the Notice of Assignment] says here, "Please forward your payments to the following address: Countrywide Funding Corporation." Do you see that?
>
> A: Yeah.
>
> Q: And then it says, "Countrywide Funding Corporation will be sending you a payment book in the next few weeks," correct?
>
> A: Right.
>
> Q: So you understood that Countrywide would be involved as the lender in this process, did you not?
>
> A: Correct.

Q: And you understood that at closing?

A: Yes.

Q: Do you recall if you or Ms. Keller had any questions about the lender being Countrywide as opposed to Mission Mortgage?

A: I don't recall any questions.

Q: And you certainly had no objection to that occurring?

A: I don't recall that there was an objection raised.

Q: And you don't have any objection to date to Countrywide being the lender - -

A: No, I don't.

In his brief on appeal and at oral argument, Hawthorne asserted that he was told only "that Countrywide would have the right to receive future payments as the new servicer of the loan." In essence, he argued that he did not understand the word "lender" as used in his deposition in the same way that it is being argued on appeal. However, the record does not reflect any presentation of this argument in response to Countrywide Home Loans' motion, even though this testimony formed the basis for that motion. Rather, he only argued that the absence of Countrywide Home Loans' name from the Mortgagor's Affidavit proves that he did not grant authority to Countrywide Home Loans to share his insurance information.

However, the evidence available in the record to evaluate Countrywide Home Loans' motion for summary judgment establishes: (1) Mission Mortgage acted as the lender by arranging the loan and completing all the necessary documentation but sold the mortgage to Country Home Loans before the parties closed on the loan; (2) the "Mortgagor's Affidavit" only named Mission

6

Mortgage as the lender; (3) Hawthorne received notice *at closing* that servicing rights to his loan belonged to Countrywide and that he would be making his payments to Countrywide Home Loans; (4) Hawthorne signed the "Mortgagor's Affidavit" with this knowledge; and (5) Hawthorne expressly admitted in his deposition that he understood at the time of closing that Countrywide Home Loans, as opposed to Mission Mortgage, would be the "lender" in relation to his mortgage.[5] In light of these facts, the only reasonable interpretation of the Mortgagor's Affidavit compels including Countrywide Home Loans as a lender for purposes of the affidavit. Thus, Countrywide Home Loans met its burden on summary judgment to show that Hawthorne furnished it "specific written authority" under article 21.48A to share his insurance information. *See* Tex. Ins. Code Ann. art. 21.48A, § 2(c). We overrule Hawthorne's first issue.

In his second issue, Hawthorne argues that, assuming that the grant of authority reached to Countrywide Home Loans, its actions nonetheless exceeded the scope of the grant of authority. However, Hawthorne neither presented this claim to the trial court nor argued it in his answer to Countrywide Home Loans' motion for summary judgment. Issues not expressly presented to the trial court may not be considered on appeal as grounds for reversal of a summary judgment. Tex. R. Civ. P. 166a(c); *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex. 1986). Because this issue is not properly before us, we will not consider it in our review of this case. We overrule his second issue.

---

[5] There is no dispute that Countrywide Home Loans is a lender under the definition in article 21.48A. *See* Tex. Ins. Code Ann. art. 21.48A, § 1(1) (West Supp. 2004).

7

## CONCLUSION

Because we overrule Hawthorne's issues on appeal, we affirm the summary judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   January 8, 2004